**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICHARD ROSE,
7060 N. Greenview Ave.
Apartment 1S
Chicago, IL 60626,
Plaintiff,

v.

THE BROOKINGS INSTITUTION
LONG TERM DISABILITY COVERAGE
1775 Massachusetts Avenue, NW
Washington, DC 20036

AND

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,
751 Broad Street
Newark, NJ 07102

Defendants.

Case No.:

# COMPLAINT

1. Plaintiff, Richard Rose ("Plaintiff" or "Mr. Rose"), by and through his undersigned counsel, initiates this action to seek redress against Defendant Long Term Disability Coverage for All Employees Classified by The Employer as All Employees Excluding Senior Fellows, Vice Presidents and President of The Brookings Institution ("the Disability Plan"); Defendant Employee Term Life, Accidental Death and Dismemberment and Dependents Term Life Coverage for All Employees Classified by the Employer as All Employees Working 32 Hours or More ("the Group Life Plan"); and Defendant The Prudential Life Insurance Company of American ("Prudential") (collectively "Defendants") for recovery of denied

long term disability ("LTD") benefits and denied waiver of premium for group life insurance benefits pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

2. This court has jurisdiction over this matter pursuant to ERISA, specifically 29 U.S.C. §§ 1132(e)(1) and 1132(f), which grants the district court jurisdiction to hear civil actions brought to recover benefits under the terms of an employee welfare benefit plan.
3. This action may also be brought before this court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.
4. This court has personal jurisdiction in this matter as the Disability Plan and the Group Life Plan are administered in the District of Columbia and Prudential has substantial and continuous contacts within this district.
5. Venue is proper pursuant to the provisions of 28 U.S.C. § 1132(e)(2) in the District of Columbia because it is where the original denial of LTD benefits occurred and where the Plan administrator is located.

## THE PARTIES

6. Plaintiff is a resident of Chicago, Illinois, and was a participant in the Plan through his employment with the Brookings Institution.
7. Defendant the Disability Plan is an employee welfare benefit plan established to provide disability benefits to qualifying employees of the Brookings Institution.
8. Defendant the Group Life Plan is an employee welfare benefit plan established to provide term life insurance coverage for employees of the Brookings Institution.
9. Defendant Prudential is a national insurance company which underwrites the Disability Plan

and the Group Life Plan, and has been designated as the Claims Administrator for both plans, with sole discretion to interpret the terms of each plan, make factual findings, and determine eligibility for benefits.

## FACTUAL ALLEGATIONS

10. All prior paragraphs are incorporated by reference, as if fully set forth herein.

**Medical Background:**

11. In 1992, Mr. Rose was diagnosed with the human immunodeficiency virus (HIV), and has since suffered from various complications of both the disease and treatment, including symptoms of treatment-resistant major depression; cognitive deficits such as memory loss and confusion related to ECT treatment and the long-term effects of HIV disease; and HIV-related polyneuropathy and fatigue.

12. Mr. Rose's polyneuropathy manifests as severe peripheral neuropathy in his hands and feet, causing pain, the feeling of electric shocks, and numbness, with painful symptoms after even minor physical activity such as light housework or walking any distance.

13. Since his initial diagnosis, Plaintiff has been under the regular care of physicians treating both his physical and mental conditions.

14. While he lived in Washington, D.C., Mr. Rose was primarily treated by Dr. Douglas Ward, M.D., specializing in internal medicine and HIV-related care, and psychiatrist Dr. J. Thomas O'Rourke, M.D.

15. On April 10, 2017, Dr. Ward stated, "Related to this diagnosis and/or its treatment, [Mr. Rose] has a chronic painful peripheral neuropathy, which makes it difficult to walk even short distances."

16. In March, 2017, Dr. O'Rourke stated that Mr. Rose "remains unable to work in view of the combination of his HIV disease, HIV - related polyneuropathy and his ongoing treatment

resistant depression secondary to his fatigue, decreased energy and impaired concentration, memory, and attention .... It is because of his fatigue, neuropathic pain and his impaired concentration, memory, and attention that I [O'Rourke] consider him totally disabled and unable to work at any occupation."

17. On August 8, 2018, Dr. Ward noted that Mr. Rose was continuing to experience "problems with neuropathy; hands and feet."

18. On January 23, 2019, Dr. O'Rourke stated regarding Plaintiff's condition, "He is unable to stand for any significant period and his memory and concentration are impaired," and concluded "It is my opinion that he remains unable to work in view of the combination of his HIV disease, HIV neuropathy and his ongoing treatment resistant depression."

19. After moving to Chicago, Illinois, Mr. Rose began receiving treatment from Dr. Eric Christoff, MD, internal medicine physician specializing in LGBTQ health, and psychologist Dr. Paul Linden.

20. On January 16, 2019, Dr. Christoff noted Mr. Rose's Major Depression was "Moderately Severe" and caused "Extremely Difficult" functional impairment.

21. On May 3, 2019, in his treatment notes, Dr. Linden described the severity of Mr. Rose's depression, noting Mr. Rose said, "his life felt like he was just waiting to die" and he described "his struggles to become emotionally engaged in life."

22. On August 19, 2019, Dr. Linden noted that Mr. Rose "was struggling with significant depression."

23. Dr. Christoff and Dr. Linden diagnoses and treatment support that Plaintiff's physical and mental limitations are severe and render him unable to work in any capacity.

**Relevant Plan Provisions:**

24. Under the Disability Plan, individuals will receive monthly benefit payments if they meet the

definition of disabled under the terms of the plan document, and satisfy the 180-day elimination period.

25. The Disability Plan initially finds a participant disabled if they are unable to perform the material and substantial duties of their regular occupation due to a sickness or injury; if they are under the regular care of a doctor; and if they have a twenty percent or more loss in monthly earnings ("regular occupation standard").

26. After twenty-four (24) months of payments, the Disability Plan alters its definition of disabled to be when a participant is unable to perform the duties of any gainful occupation for which they are reasonably fitted by education, training, and experience; and they are under the regular care of a doctor ("any gainful occupation standard").

27. The Disability Plan defines "gainful occupation" as "any occupation including self-employment, that is or can be expected to provide you with an income within twelve months of your return to work, that exceeds: sixty percent of your indexed monthly earnings if you are working; or sixty percent of your monthly earnings if you are not working."

28. Under the Group Life Plan, death benefit protection will be extended as long as an individual is Totally Disabled, and premiums for Employee Term Life Insurance will be waived while death benefit protection is extended.

29. The Group Life Plan states that an individual is "Totally Disabled" when they are not working any job for wage or profit; and due to sickness, injury or both, they are not able to perform for wage or profit, the material and substantial duties of any job for which they are reasonably fitted by education. training or experience.

**Claim Denial and Appeal:**

30. Mr. Rose was previously employed at the Brookings Institution as a Marketing Manager, during which time he was a covered employee of both the Disability Plan and the Group Life

Plan.

31. On or around March 19, 2012, Plaintiff was forced to cease working in any capacity due to the debilitating nature of his disabilities.

32. On September 15, 2012 Prudential approved Plaintiff for LTD benefits under the Disability Plan's regular occupation standard and extended death benefits and waiver of premium payments under the Group Life Plan.

33. In addition to applying for disability benefits, Mr. Rose applied for Social Security disability benefits; the Social Security Administration ("SSA") found Mr. Rose to be totally disabled at the first level of the adjudication process.

34. After receiving benefit payments for twenty-four months, Prudential continued Plaintiff's LTD benefits under the broader any gainful occupation standard for meeting the definition of disabled under the Disability Plan.

35. Plaintiff's physical or mental disabilities have only worsened since he has been approved for LTD benefits.

36. On June 14, 2018, Prudential terminated Plaintiff's LTD benefits under the Disability Plan, stating that his condition no longer prevented him from working "any occupation" as defined by the plan's controlling document.

37. On June 21, 2018, Prudential ended Plaintiff's extended death benefits and waiver of premium payments under the Group Life Plan, finding that his condition no longer met the definition of disabled under the plan's controlling document.

38. Prudential terminated Plaintiff's benefits despite no improvement in his physical condition, and based on a records-only review of his medical history and treatment.

39. On December 11, 2018, Plaintiff appealed Prudential's termination of LTD benefits under the Disability Plan.

40. On December 18, 2018, Plaintiff appealed Prudential's termination of his benefits under the Group Life Plan.

41. On March 11, 2019 Plaintiff sent supplemental documents to Prudential in support of his appeal of denied LTD benefits.

42. On March 16, 2019, Plaintiff sent supplemental documents to Prudential in support of his appeal of termination of benefits under the Group Life Plan.

43. On April 16, 2019, Prudential denied Plaintiff's appeal and upheld its termination of his LTD benefits.

44. On April 17, 2019, Prudential denied Plaintiff's appeal and upheld their termination ending his benefits under the Group Life Plan.

45. On October 14, 2019, Plaintiff submitted a voluntary second appeal of Prudential's decision to terminate his LTD benefits under the Disability Plan.

46. Also, on October 14, 2019, Plaintiff submitted a voluntary second appeal of Prudential's decision to terminate his benefits under the Group Life Plan.

47. On January 13, 2020, Plaintiff sent additional supplemental documents, including a neurological exam, to support both of his second appeals.

48. On February 13, 2020, Prudential denied Plaintiff's second appeal for benefits under the Group Life Plan.

49. On February 14, 2020, Prudential denied Plaintiff's second appeal for LTD benefits under the Disability Plan.

50. Plaintiff has complied with all contractual requirements of the Disability Plan, including but not limited to the submission of sufficient medical proof of his ongoing and disabling medical conditions.

51. Plaintiff has exhausted all administrative remedies and appeals required under ERISA, 29

U.S.C. § 1133, and was advised of his rights to pursue litigation in the letters denying his appeals.

**CLAIM I: WRONGFUL TERMINATION OF LTD BENEFITS**

52. All prior paragraphs are incorporated by reference, as if fully set forth herein.
53. 29 U.S.C. § 1132(a)(1)(B) allows a plan participant to recover benefits due to them under the terms of the plan.
54. Based on his medical record and the expert opinions of his medical providers, Plaintiff remains unable to perform the duties of any gainful occupation for which he is reasonably fitted by education, training, and experience.
55. Plaintiff remains under the regular care of doctors treating his physical and mental disabilities.
56. As such, Plaintiff remains eligible for LTD benefits under the terms of the Disability Plan's controlling plan document.
57. Defendant Prudential wrongfully terminated Plaintiff's benefits in violation of ERISA.
58. Defendants' wrongful denial is a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B).
59. Plaintiff has been forced to and will continue to expend attorneys' fees to secure payment of the claims and is entitled to recover those fees pursuant to 29 U.S.C. § 1132(g).

**CLAIM II: WRONGFUL TERMINATION OF EXTENDED DEATH BENEFITS AND WAIVER OF PREMIUM PAYMENT**

60. All prior paragraphs are incorporated by reference, as if fully set forth herein.
61. 29 U.S.C. § 1132(a)(1)(B) allows a plan participant to recover benefits due to them under the terms of the plan.
62. Plaintiff is not working any job for wage or profit.

63. Based on his medical record and the expert opinions of his medical providers, due to his physical and mental disabilities, Plaintiff is not able to perform the material and substantial duties of any job for which he is reasonably fitted by education, training or experience.

64. As such, Plaintiff remains eligible for extended death benefits and waiver of premium payments under the terms of the Group Life Plan's controlling plan document.

65. Defendant Prudential wrongfully terminated Plaintiff's benefits in violation of ERISA.

66. Defendants' wrongful denial is a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B).

67. Plaintiff has been forced to and will continue to expend attorneys' fees to secure payment of the claims and is entitled to recover those fees pursuant to 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Rose prays for judgment against Defendants, as follows:

a. For an order that Plaintiff is entitled to LTD benefits under the Disability Plan;

b. For an order the Plaintiff is entitled to extended death benefits and waiver of premium payments under the Group Life Plan;

c. For payment of LTD benefits from June 2018 to present;

d. For a resumption of coverage under the Group Life Plan for extended death benefits and waiver of premium payments;

e. For prejudgment interest;

f. For reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g);

g. For costs of suit incurred herein; and

h. For such other relief as the Court deems just and proper.

DATED: June 20, 2020

Respectfully submitted,

/s/Denise M. Clark

DENISE M. CLARK (420480)
Clark Law Group, PLLC
1100 Connecticut Ave., N.W., Ste. 920
Washington, D.C. 20036
P: (202) 293-0015
F: (202) 293-0115
dmclark@benefitcounsel.com

***Attorney for the Plaintiff***